UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELKS BUILDING CORPORATION    *
OF NORWOOD,    *
    *
       Plaintiff,    *
    *
   v.    *    Civil Action No. 14-cv-10249-IT
    *
BENEVOLENT AND PROTECTIVE    *
ORDER OF ELKS OF THE    *
UNITED STATES OF AMERICA,    *
    *
       Defendant.    *

MEMORANDUM

May 3, 2016

TALWANI, D.J.

I.    Introduction

    This case involves a dispute between Plaintiff Elks Building Corporation of Norwood ("Building Corporation") and Defendant Benevolent and Protective Order of Elks of the United States of America ("BPOE") over the right to control property in Norwood, Massachusetts, ("the Norwood Property"). The Building Corporation alleges that it owns the Norwood Property and that BPOE is engaged in a coordinated scheme to wrongfully commandeer and otherwise interfere with the Building Corporation's use and enjoyment of the Norwood Property. BPOE contends that the Building Corporation is subject to BPOE's internal rules. Presently before the court is BPOE's Motion for Summary Judgment [#69]. For the following reasons, the motion is DENIED.

II.    Facts[1]

BPOE is a national fraternal organization.  It issues charters to local lodges.  Def.'s

Statement of Undisputed Material Facts, ¶¶ 1-4 [#70] [hereinafter Def.'s Facts].  The Norwood

Lodge, located in Norwood, MA, is one such local lodge chartered by the BPOE.  Amend.

Verified Compl. ¶ 6 [#51]; Def.'s Answer ¶ 6 [#52].  BPOE has internal rules including a

Constitution and Statutes (known as the "Laws of the Order").  Def.'s Facts, ¶ 3 [#70]; Decl.

Michael Zellen Supp. Def.'s Mot. Summ. J. ¶4 [#71] ("Zellen Decl.").  Members of the Norwood

Lodge have sworn to obey the BPOE statutes, rules, and regulations, and Norwood Lodge

Bylaws.  Def.'s Facts ¶ 3; Aff. Michael Brown Opp'n Def.'s Mot. Summ. J. ("Brown Aff.") Ex.

I [#85].

In 1922 (and 1923), the BPOE's Laws of the Order stated that "[a] Lodge may establish

and maintain a home or club, for the social enjoyment of its members" and that "control of and

membership in such home or club, whether incorporated or not, shall be limited exclusively to

the members in good standing in the Lodge establishing the same; provided, however, that the

governing body of any such home or club may elect, as associate members, on such terms as it

may prescribe and for a limited period of time, members in good standing other of Lodges of the

Order."  Decl. Bryan Klatt Supp. Def.'s Mot. Summ. J. ("Klatt Decl.") Attach. A, B [#73].

Section 208 of the BPOE's 1922 and 1923 Laws of the Order provided further that "a

subordinate lodge may, in its discretion, have such home or club incorporated, separately from

the Lodge, but a majority of the officers, directors, or managing board of such corporation shall

---

[1] Unless otherwise indicated, the facts are taken from the parties' Local Rule 56.1 statements and
responses, and are undisputed or not properly disputed for purposes of summary judgment.  See
Fed. R. Civ. P. 56(c), (e)(2).  In ruling on summary judgment, the court properly construes the
facts, as supported by the record, in the light most favorable to Plaintiff, the nonmovant.  See
Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008).

at all times be selected from the elective officers and the Past Exalted Ruler of the Lodge." Id.

Section 208 of the BPOE's 1922 and 1923 Laws of the Order provided further that any Articles

of Incorporation, by-laws, rules and regulations of such corporation be submitted to the

Chairman of the Judiciary. Id.

On August 11, 1923, the Building Corporation was incorporated under Mass. Gen. Laws

ch. 180 as a Massachusetts non-profit corporation. [2]  Pl.'s Statement of Undisputed Material

Facts ¶ 1 [#86] [hereinafter Pl.'s Facts].  Pursuant to its Certificate of Organization, the Building

Corporation was formed

> for the purpose of promoting the educational, literary and fraternal needs and
> desires of the members thereof, and of any person or persons affiliated therewith
> as a member or members of Norwood Lodge No. 1124, Benevolent and Protective
> Order of Elks, and for the purpose aforesaid may acquire by purchase or
> otherwise, and maintain, any and all real estate and personal property, essential
> and necessary therefor.

Decl. James Ewbank Supp. Def.'s Mot. Summ. J. ("Ewbank Decl.") Attach. A [#72].  On August

21, 1923, the Building Corporation acquired title to property located at 152-158 Winslow

Avenue, Norwood, Norfolk County, MA.  Def.'s Facts ¶ 8 [#70]; Am. Verified Compl. Ex. B

[#51-2] (Quitclaim Deed).  Since 1923, the Building Corporation has leased the property on a

yearly basis to Norwood Lodge.  Pl.'s Facts ¶¶ 15, 18 [#86]; Def.'s Facts ¶ 9 [#70].

BPOE's statutes have been revised at various times.  In 1950, the BPOE statutes were

amended and purported to place further restrictions on action, without Grand Lodge permission,

with respect to lodge property, regardless of whether the property was held by a separate

corporation.  Def.'s Facts ¶ 14.

In 1986, the Commonwealth of Massachusetts dissolved the Building Corporation for not

---

[2] The parties dispute whether the Building Corporation was created by Norwood Lodge or by a group of individuals.  Pl.'s Facts ¶ 11 [86].

filing required reports pursuant to Mass. Gen. Laws ch. 180, § 26A.  Pl.'s Facts ¶ 102 [#86].  In

March 1988, Norwood Lodge gave notice to its members that the Commonwealth of

Massachusetts had dissolved the Building Corporation in 1986 for failing to file required reports

and Norwood Lodge then voted to dissolve the Building Corporation and to take over the

expenses and operations of the property.  Def.'s Facts ¶¶ 22-23 [#70].  Several months later,

however, Norwood Lodge moved to reestablish the Building Corporation.  Id. ¶¶ 24, 27 [#70].

At some point before December 1988, the BPOE statutes were again amended.  Id. ¶ 24

[#70].  This version of the statutes, still in place today, includes a provision, Section 16.030,

stating that, if a lodge's separate building corporation dissolves, "all property owned, held or

controlled by it shall be transferred and distributed by its Board of Directors to the Lodge or

other non-profit organization, fund, corporation or trust forming a part of or controlled by the

[BPOE]."  Id. ¶ 25 [#70].  The statutes further provide that all articles of incorporation and

bylaws of a lodge's separate building corporation, and any amendments thereto, must be

approved by BPOE's Committee on Judiciary in order to be effective.  Id. ¶ 26 [#70].

The Building Corporation received a Revival Certificate from the Commonwealth of

Massachusetts in March 1989.  Decl. Philip L. Sullivan Supp. Def.'s Mot. Summ. J. ("Sullivan

Decl.") Attach. A 13 [#74].  The revival certificate states,

> [i]n compliance with the provisions of section 108 of Chapter
> 156B of Massachusetts General Laws, application in proper form
> having been seasonably made upon me, the Secretary of the
> Commonwealth, for revival of Elks Building Corporation of
> Norwood a domestic corporation organized August 11, 1923 under
> the authority of Chapter 180 of the Massachusetts General Laws,
> and dissolved under the provision of Chapter 180 Sec. 26A of the
> Massachusetts General Laws, and the required fee having been
> received and all other requirements of the Statutes having been
> complied with, I hereby declare that Elks Building Corporation of
> Norwood is revived for all purposes and without limitation of time

> with the same powers, duties and obligations as if the charter had
> not been revoked.

The revival certificate is dated March 7, 1989.  Id.

In 1992, the Norwood Lodge submitted proposed Articles of Incorporation and Bylaws for the Building Corporation, signed by Building Corporation officials, to the BPOE for approval.  Decl. Thomas F. Tobin Supp. Def.'s Mot. Summ. J. ("Tobin Decl.") Attach. B [#76]. The BPOE took no action at that time, and the Building Corporation did not file the Articles of Incorporation with the Massachusetts Secretary of State.

The Building Corporation's 2000 and 2001 By-Laws provide that "[o]nly members of good standing of [Norwood Lodge] shall be eligible for election as Officers of the Corporation, and when ever an Officer of the Corporation ceases to be a member of said Lodge[, h]is term of office shall ipso-facto expire . . . ."  Brown Aff. Ex. 6 [#85-6].  The Bylaws also provide that "[e]very member in good standing of the [Norwood Lodge] shall ipso-facto be a member of the [Building Corporation]."  Id.

In May 2014, BPOE issued an Executive Order placing Norwood Lodge on probation and requiring the Lodge to come into compliance with its statutes.  Def.'s Facts ¶ 50 [#70].  The Norwood Lodge did not appeal that order.  Id. ¶ 52.  In September 2015, the Norwood Lodge membership was asked to accept the BPOE Statute Section 16.030, to abolish the Building Corporation and its Board of Directors and to replace them with an entirely new Board of Directors. The members of the Norwood Lodge voted against such action.  Pl.'s Facts ¶ 99 [#86].

Currently, all Building Corporation members are members of Norwood Lodge.  Id. ¶¶ 6-7 [#86].

Plaintiff files as a tax exempt title-holding corporation under 26 U.S.C.A. § 501(c)(2). Def.'s Facts ¶ 55 [#70]; Zellen Decl. ¶ 7 [#71].

III.   Discussion

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) (quoting Fed. R. Civ. P. 56 advisory committee note).  Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.  A fact is material if it has the potential of determining the outcome of the litigation."  Patco Constr. Co. v. People's United Bank, 684 F.3d 197, 206-07 (1st Cir. 2012) (internal quotation marks and citations omitted).  In ruling on a motion for summary judgment, the court views the record in the light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor.  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

A.   *Competing Claims for Declaratory Judgments*

The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-2202, "is designed to enable litigants to clarify legal rights and obligations before acting upon them." Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir.1995).  In count two of the complaint, the Building Corporation seeks a declaratory judgment that: it is the lawful owner of the Norwood Property; BPOE has no right to the Norwood Property; and BPOE has no legal control over the Building Corporation.   Am. Verified Compl. ¶¶ 95-98 [#51].   BPOE's counterclaim seeks a declaratory judgment that the Norwood Lodge of Elks #1124 ("Norwood Lodge"), the Building Corporation, and their members are subject to and bound by BPOE's Statutes.  Answer ¶ 20 [#52].

1. *The Ownership of the Norwood Property*

The Building Corporation asks the court to declare that it is the lawful record owner of all right, title, and interest in the Norwood Property, BPOE has no ownership interest in the Norwood Property, and any attempt by BPOE to receive, hold, conserve, manage, sell, transfer and/or deliver the Norwood property is invalid.  Am. Verified Compl.¶ 96a-e [#51].  BPOE asserts that it is entitled to summary judgment because "BPOE has never claimed an ownership interest in the Norwood Property, and does not dispute that the Building Corporation holds title to the Norwood Property," and "[a]ccordingly, there is simply no dispute regarding 'ownership' that requires review by this Court."  Def.'s Mem. Supp. Mot. for Summ. J. 3 n.2 [#77].  BPOE's concession does not moot the Building Corporation's claim for declaratory judgment as to the lawful ownership of the Norwood Property.  Recent actions by either BPOE representatives or the Norwood Lodge to change locks and confiscate property undermine BPOE's assertion that there is no dispute about ownership.  Therefore, the Building Corporation's request for declaratory judgment on this issue is not moot, and BPOE's motion for summary judgment is denied.

2. *Direct Control of the Building Corporation by BPOE*

The Building Corporation claims that it has an independent corporate structure, and that any attempt by BPOE to cause a dissolution of the Building Corporation or change members and officers of the Building Corporation is invalid.  BPOE asserts that the Building Corporation is bound by the Laws of the Order.

The Building Corporation is a corporate entity governed by Mass. Gen. Laws. ch. 180 with the full rights and powers specified in Mass. Gen. Laws ch. 156B, § 9.  BPOE nonetheless argues that the Building Corporation's 1923 Certificate of Organization reflects that the Building

Corporation was formed for the *sole* benefit of the Norwood Lodge members and that this binds the Building Corporation to BPOE's internal statutes.  Def.'s Mem. Supp. Mot. Summ. J. 6 [#77] (emphasis original).  The 1923 Certificate of Organization is ambiguous as to whether the Building Corporation was formed solely for the benefit of the Norwood Lodge members.  Further, even if this were the purpose for the Building Corporation's creation, the Building Corporation was formed as a separate corporate entity.  That corporate entity's governing document, the Building Corporation's 1923 Certificate of Incorporation—the only such document validly filed with the Massachusetts Secretary of State—does not mention BPOE and does not directly bind itself to BPOE's Laws of the Order.

BPOE argues that the Lodge members have operated the Building Corporation since its formation solely for their benefit, and points to the parties' actions as illustrating their understanding that the Building Corporation is bound by BPOE statues.  The Building Corporation points to other actions to illustrate the opposite understanding.  Regardless of whether the Building Corporation behaved in accordance with the BPOE statutes or disregarded them, that voluntary conduct does not eliminate the fundamental problem with BPOE's argument, namely, that the Building Corporation has a separate corporate form, and the record does not establish that it signed on to BPOE's various statutory amendments.

In March 2016, after the court alerted BPOE of this issue at the hearing on the summary judgment motion, BPOE attempted to approve, *nunc pro tunc*, a set of Building Corporation Bylaws and Articles of Incorporation that were signed in 1992 by the Building Corporation.  See Pl.'s Mot. TRO [#95-5].  The process for making amendments to a Mass. Gen. Laws. ch. 180 corporation's articles of organization, however, is governed by statute.  Pursuant to Mass. Gen. Laws ch. 180, § 7, a corporation can authorize amendments by the vote of two-thirds of its

voting members.  Such amendments must then be signed by the corporation's president or vice president and by the clerk or assistant clerk, and must then be submitted to the state secretary. Mass. Gen. Laws. ch. 156B, § 74.  The 1992 Articles of Incorporation were never submitted to the Secretary of State, and BPOE's attempt to make them operative now is of no effect. Furthermore, the 1992 Bylaws, to the extent they may have been adopted by the members of the Building Corporation, have been superseded by the 2000 and 2001 Bylaws that were duly adopted by the Building Corporation.  Brown Aff. Ex. F [#85-6].

BPOE further argues that because of the Building Corporation's status as a tax exempt single parent title-holding corporation under Internal Revenue Code ch. 76, § 1, the Building Corporation exists for the purpose of holding title to property for the benefit of Norwood Lodge members, and because the Norwood Lodge and its members are contractually bound to BPOE, it is "the only reasonable conclusion" that the Building Corporation is subject to the same BPOE statutes that govern Norwood Lodge.  Def.'s Mem. Supp. Mot. Summ. J. 7-8 [#77].  The Building Corporation files federal income taxes with a 501(c)(2) status, Def.'s Facts ¶ 55 [#70], thereby restricting its purpose in accordance therewith.  The statute does specify that a parent organization receiving support from a title-holding corporation must exercise some control or ownership over the corporation.  Here, as detailed below, that control may be found in the Building Corporation's Bylaws requiring that officers be Norwood Lodge members.  However, the Building Corporation's tax status does not create a contract between the Building Corporation and BPOE, and does not make the Building Corporation subject to BPOE statutes.

BPOE also argues that its statutes make clear that local lodges have the power to create subordinate corporations for the purpose of holding property, and that those corporations, like the local lodges for which they are formed, are subordinate to BPOE.  BPOE points to cases

establishing the general principle that members of a fraternal organization are bound by the organization's bylaws regularly made or amended, see Reynolds v. Supreme Council of Royal Arcanum, 78 N.E. 129, 132 (Mass. 1906), and notes that courts have extended this reasoning to find local lodges bound by amendments to the parent organization's bylaws or governing code, see Grand Lodge of N.H., Indep. Order of Odd Fellows v. Union Lodge No. 32 of Deerfield N.H., Indep. Order of Odd Fellows, 279 A.2d 590, 593 (N.H. 1971) ("It is generally recognized that fraternal organizations may change their bylaws and enact others which are reasonable and consistent with the purposes of organizations and that members are bound by such changes.") (citing Polish Falcons of America v. American Citizens Club for Poles of Natrona, 13 A.2d 27 (Pa. 1940)).

BPOE specifically argues that Laws of the Order § 16.030, which requires any separate corporation formed by a lodge to comply with the Laws of the Order, reaches the Building Corporation. BPOE turns to a California state court of appeals case for support on this point. In Benevolent & Protective Order of Elks v. Berkeley Elks Hall Assoc., a local Elks lodge had formed a property holding corporation, the purpose of which, as set out in its articles of incorporation, was "[t]o acquire or purchase land . . . for the meeting and accommodation of lodges of the [BPOE]." No. A046914 at 2 (Cal. App. Ct. Apr. 29, 1991). After the lodge at issue in Berkeley Elks Hall Assoc., was dissolved, the court found there to be an "implicit agreement between the Hall Association and the Berkeley Lodge that the Hall Association property would be held in trust for the Berkeley Lodge." Id. at 18. As such, the court found Berkeley Hall Association bound by section 9.170 of the BPOE statutes regarding disposition of real property upon a lodge's dissolution. Id. Berkeley Elks Hall Assoc. is distinguishable from the facts presented here because the Norwood Lodge has not been dissolved. In addition, the

original articles of incorporation in <u>Berkeley Elks Hall Assoc.</u> clearly stated that its purpose was to acquire land "for the meeting and accommodation of lodges of the Benevolent and Protective Order of Elks of the United States of America . . ." <u>id.</u>, while the Building Corporation's Articles of Incorporation have no such provision linking it to BPOE.

BPOE's arguments in favor of summary judgment are unavailing. The BPOE's internal rules do not constitute a contract between BPOE and the Building Corporation, and the Building Corporation is not directly bound by the BPOE statutes. BPOE may not disregard the autonomy the Building Corporation retains given the Building Corporation's corporate form and internal governance structure. BPOE's recent attempts to exert direct control over the Building Corporation's board is not consistent with that corporate structure.

### 3. *Indirect control of the Building Corporation*

BPOE contends that the Norwood Lodge and its members are required to comply with the BPOE's internal laws. Under Massachusetts and First Circuit law, the constitution and bylaws of a parent organization, and the charter of a subordinate branch thereof, constitute a contract between the subordinate and the parent organization. <u>See</u> <u>Kelley v. Weiss</u>, 102 N.E.2d 93, 94-95 (Mass. 1951); <u>Ortiz-Bonilla v. Federacion de Ajedrez de P.R., Inc.</u>, 734 F.3d 28, 40-41 (1st Cir. 2013). Members of a fraternal organization are also deemed contractually bound by the organization's internal laws. <u>Reynolds</u>, 78 N.E. at 132. Courts often defer to those rules and their application to the fraternal organization's members. <u>Kelley</u>, 102 N.E.2d at 94-95; <u>see also</u> <u>Ortiz-Bonilla</u>, 734 F.3d at 40-41 (noting that "[c]ourts generally will not interfere with the internal affairs of a voluntary association absent mistake, fraud, collusion or arbitrariness"). Although Norwood Lodge is not a party to this action, for purposes of summary judgment the court accepts BPOE's contention that the Norwood Lodge and its members may be required to

comply with BPOE's internal rules.

Of consequence here, the Building Corporation's 2001 Bylaws require "[o]nly members of good standing of Norwood Lodge # 1124, Benevolent Protective Order of Elks shall be eligible for election as Officers of the Corporation, and when ever an Officer of the Corporation ceases to be a member of said Lodge.  His term of office shall ipso-facto expire, notwithstanding anything to the contrary in these by-laws."  Brown Aff. Ex. F [#85-6].  The Building Corporation's Bylaws further provide that vacancies "in any office shall be filled by the Board of Directors to serve to the next annual meeting.  Such persons appointed to fill such vacancies shall serve until the next annual meeting at which time any unexpired terms shall be filled by election of the members."  Id.  Accordingly, so long as the corporate form and bylaws are respected, BPOE may ultimately be able to affect the Building Corporation's course of action.  At this juncture, however, BPOE cannot prevail on summary judgment.

### 4.  *The Parties' future rights in the Norwood Property*

On the record before it, the court cannot issue a declaration as to the future status of the Norwood Property, including whether it may be transferred to BPOE should the Building Corporation be dissolved.  Neither the Certificate of Organization nor the 2001 Bylaws have a dissolution provision, and therefore summary judgment is unwarranted.  In cases such as this, where a charitable corporation organized under Mass. Gen. Laws ch. 180 has assets and seeks to dissolve, "the petition for its dissolution shall be filed in the supreme judicial court setting forth in substance the grounds for the application for dissolution and requesting the court to authorize the administration of its funds for similar public charitable purposes as the court may determine."  Mass. Gen. Laws. ch. 180, § 11A(d).

B.      *Intentional Interference*

Building Corporation also alleges that BPOE intentionally and willfully interfered with Building Corporation's contractual and advantageous business relationship by instructing the Norwood Lodge to make no monthly rental payments to Building Corporation, by reducing the monthly rent payment Norwood Lodge paid Building Corporation, by withholding an insurance payment, and by taking steps to unlawfully appropriate control and ownership over the Norwood Property.  Am. Verified Compl. ¶¶ 88-93 [#51]; Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 17-18 [#83]; Pl.'s Facts ¶¶ 80-98 [#86].  Under Massachusetts Law, Plaintiff must show that "(1) [it] had an advantageous relationship with a third party . . . ; (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff[s] [was] harmed by the defendant's actions."  FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 107 (1st Cir. 2009) (quoting Blackstone v. Cashman, 860 N.E.2d 7, 12-13 (Mass. 2007)).

On summary judgment BPOE argues first that the relationship between Norwood Lodge and Building Corporation cannot serve as a basis for an intentional interference claim.  BPOE points to Building Corporation's tax status as a 501(c)(2) corporation as evidence that Building Corporation's purpose is limited to holding property for the use of Norwood Lodge, and that Building Corporation is thereby precluded from taking any independent, commercial action with respect to the Norwood Property.  Def.'s Mem. Supp. Mot. Summ. J. 13 [#77].  BPOE suggests further that Building Corporation is a title holding company and cannot enter into a contract with the Norwood Lodge.

According to Building Corporation, however, the Norwood Lodge and Building Corporation are in a landlord tenant relationship.  See Am. Verified Compl. Ex. C (Commercial

13

Lease) ¶ 2 [#51-3] ("The Lease is executed by and between the Elks Building Corporation of Norwood ("the Lessor") located at 152 Winslow Avenue, Norwood, MA 02062 and the Norwood Lodge of Elks No. 1124, acting through the Home Committee (the "Lessee") located 152 Winslow Avenue, Norwood, MA 02062.");[3] Brown Aff. ¶¶ 20-21 [#85]. In Massachusetts, a charitable corporation, including one such as the Building Corporation, has the power to lease property. Mass. Gen. Laws ch. 180, § 6 (referring to Mass. Gen. Laws. ch. 156B § 9(f)). Accordingly, BPOE has not established that the relationship between the Norwood Lodge and Building Corporation cannot serve as the basis for an intentional interference claim. Nor, for purposes of summary judgment, may the court disregard Building Corporation's evidence that BPOE has caused rent to be withheld and has withheld a check written to Building Corporation by its insurance company.

BPOE contends that any action BPOE has taken with respect to Building Corporation does not constitute the improper means or motive required to make out a claim for intentional interference. Def.'s Mem. Supp. Mot. Summ. J. 13 [#77]. Although a parent company may be found not to have interfered in the contract between a subsidiary and a third party because the parent was acting to protect its own economic interest, see Williams v. B & K Medical Systems, Inc., 732 N.E.2d 300, 309 (Mass. App. Ct. 2000) (summarizing cases when one who has a financial interest in the business of a third person does not interfere improperly), here, at minimum, there is a question of fact as to whether BPOE was acting to protect a legitimate business interest.

Third, BPOE disputes that Building Corporation has suffered any loss or actual harm to

---

[3] Plaintiff attached a copy of the 2010-2011 lease between Building Corporation and Norwood Lodge. A current lease has not been submitted to the court.

support its claim.  Instead, BPOE argues, Building Corporation's claim is based on speculation about BPOE's future actions, and that prospective harm cannot satisfy a claim for intentional interference.  Def.'s Mem. Supp. Mot. Summ. J. 14 [#77].  Building Corporation has made a sufficient showing of monetary damages from lost rent and the withheld insurance check to withstand summary judgment.  See Brockton Power LLC v. City of Brockton, 948 F. Supp. 2d 48, 75 (D. Mass. 2013).  As such BPOE's motion for summary judgment as to Building Corporation's intentional interference with advantageous business relations claim is denied.

    IV.    <u>Conclusion</u>

    For the above-stated reasons, Defendant's <u>Motion for Summary Judgment</u> [#69] is DENIED.

    IT IS SO ORDERED.

Date: May 3, 2016                                          /s/ Indira Talwani
                                                           United States District Judge